# Callan *v.* McDaniel.

*Statutory Real Action in nature of Ejectment.*

1. *Disclaimer, or statement limiting plea of not guilty.*—In ejectment, or the statutory action in the nature of ejectment, when the defendant disclaims as to a a portion of the premises sued for, he is required to " state distinctly upon the record the extent of his possession" (Code, § 2963); which statement must designate with reasonable certainty the part as to which he disclaims, or the part as to which he defends, and, if wanting in that requisite certainty, may be stricken from the record on motion, leaving the plea of not guilty to operate as an admission of possesion of the entire premises; but it is not subject to demurrer, on account of such uncertainty or indefiniteness.

2. *Error without injury in admission of evidence.*—Error in the exclusion of a deed as evidence, when offered in connection with the certificate of acknowledgment only, is cured by the subsequent admission of the deed on proof of execution by the attesting witnesses.

3. *Objection to question or answer.*—The allowance of an improper question to a witness, against objection, is not an error which will work a reversal, when the record does not show that illegal evidence was thereby elicited and admitted.

4. *Bill in equity; when admissible as evidence in another suit.*—A bill in equity, not sworn to, is regarded as the mere suggestion of counsel, and is not admissible as evidence against the complainant in another suit; but, when duly sworn to by him, it is an admission of the facts therein stated, and admissible as evidence against him in another suit.

5. *Lease construed; stipulation for continued possession of lands cleared and cultivated.*—A stipulation in a written lease for the term of three years, that the lessee shall have the right to occupy for three years such portions of the lands as he may clear and reduce to cultivation each year of the term, runs with the land, and is binding on a purchaser, or as-

[Callan v. McDaniel.]

signee of the reversion ; and when sued by the purchaser or assignee, on the expiration of his original term, the lessee may show his right to the continued occupation of the portions of land cleared and cultivated under this stipulation.

6. *Injunction; violation of, not cognizable at law.*—The violation of an injunction while in force is a contempt of the court from which the writ issued, and may be punished by that court while the proceedings are *in fieri;* but a court of law can not take cognizance of it, nor allow it to operate as a forfeiture of legal rights in another suit, when it is not shown that the injunction has been perpetuated by a final decree.

7. *Impeaching witness by proof of former statements.*—An affidavit made by a witness in another suit can not be received to impeach his testimony as given orally, unless the two statements are contradictory and irreconcilable as to a material matter.

8. *Answer in chancery; whole admissible, when part has been read.* When parts of an answer to a bill in equity have been read in another suit as evidence against the respondent, he has the right to read the whole of it as evidence.

9. *Charges requested ignoring material facts, or requiring explanation.* Charges requested, which ignore or obscure material evidence, or which require additional instructions to prevent them from misleading the jury, may be refused.

10. *Charges given, having tendency to mislead.*—A charge given, having a tendency to mislead the jury, is not an error which will work a reversal of the judgment, since the appellant, if apprehending injury from it, might have asked explanatory instructions.

11. *What will sustain action.*—A charge given, instructing the jury that, " before they can find for the plaintiff, they must be convinced from the evidence that he was seized and possessed of the lands sued for before the bringing of this suit, and that since said possession accrued defendant dispossessed him,"—though susceptible of a construction which, by requiring actual possession on the part of the plaintiff, as an essential element of his right to recover, would assert an erroneous proposition, is yet susceptible also of another construction, which would assert a correct proposition—that is, that the plaintiff must have had a seizin in law, giving him a constructive possession, or drawing to it the right of immediate possession.

APPEAL from the Circuit Court of Cherokee.

Tried before the Hon. L. F. Box.

This action was brought by Andrew J. and P. A. Callan, against Fleming McDaniel, to recover the possession of a tract of land, with damages for its detention ; and was commenced on the 27th January, 1881. The land sued for was thus described in the complaint: "A part of the east half of the northeast quarter, and the west half of the north-west quarter, of section twelve (12), township nine (9), range ten (10) ; and the south-east quarter of section eleven (11)," same township and range, " and all that part of the north-east quarter of section fourteen (14)," same township and range, "in the Coosa land district, lying on the north-west side of Chattooga river, and containing in all 326 acres, more or less, and known as the William Gray place, near Gaylesville in said county of Cherokee, and lying west of the large branch that divides a certain tract of land *willed* by said Gray to Milly Smith and Rachel

7

[Callan v. McDaniel.]

Moyher, and also lying north of Chattooga river." The defendant filed a plea in these words: "The defendant says he is not guilty of the matters alleged in plaintiffs' complaint, except as hereinafter stated, to-wit: for further plea, the defendant says, that he is not now, nor was he at the commencement of this suit, in the possession of the lands described in said complaint, except about twenty-seven (27) acres, to-wit: the house and lot on which he resides, and about twenty-six (26) acres of bottom lands, which the defendant has cleared and put in cultivation on said lands since the 1st day of March, 1878, under and by virtue of a lease in writing made to the defendant by plaintiffs' lessor; and defendant disclaims the possession of any part of said lands mentioned in said complaint, at and before the commencement of this suit, except that part of said lands stated in this plea." To this plea the plaintiff demurred, "1st, because said plea of disclaimer is indefinite, and is not specific and sufficient as to the portion of land as to which he does not disclaim; and, 2d, because it should set out said land by definite and certain description, which it fails to do; and because it does not show said lease was unexpired, or set out said lease sufficiently, and is insufficient in pleading a lease." The court overruled the demurrer, and required the plaintiff to take issue on said plea; and the cause was tried on issue joined on that plea.

The plaintiffs claimed the lands under a deed from Milly Smith to them, which was dated the 10th January, 1881, attested by two witnesses, and purported to be executed in Bartow county, Georgia; and appended to it was a certificate of acknowledgment, in the statutory form, purporting to have been made by the ordinary of said county of Bartow, on the day of the date of the deed; and also a certificate of the judge of probate of said county of Cherokee, as to the filing and registration of said deed in his office on the 26th February, 1881. On the trial, as the bill of exceptions states, the plaintiffs offered this deed in evidence, "with the indorsements thereon." "The defendant objected to the introduction of said deed, and the court sustained the objection, and refused to allow said deed to go to the jury; to which ruling the plaintiffs excepted." The plaintiff then proved the handwriting of the attesting witnesses to said deed, and their residence in Georgia; and on this proof the deed was admitted in evidence, and was read to the jury. The plaintiffs then introduced a witness who testified to the rental value of the lands, "and that the defendant was in possession of the houses and lots and part of the bottom lands. Said witness was asked, on cross-examination, when did the defendant clear the bottom lands, and who is in possession of said twenty-six acres; to which question plaintiffs objected,

[Callan v. McDaniel.]

but the court overruled the objection, and permitted the witness to answer; and plaintiffs then and there excepted."

The defendant had entered into possession of the lands, and still held and claimed the right to hold the portions for which he defended, under a written lease dated April 9th, 1878, which was in these words: "This indenture, or contract, entered into between Milly Smith, of Bartow county, Georgia, of the first part, and Fleming McDaniel, of Cherokee county, Alabama, of the second part: Know all men by these presents, that I, Milly Smith, of the first part, have this day leased to the said F. McDaniel, of the second part, so much of my land now unimproved, and lying in Cherokee county, Alabama, near Gaylesville, and lying on the Chattooga river, upon the following conditions: The said McDaniel is to build, at his own expense, a comfortable house or houses, such as he may need for his own use; and he is to clear twenty acres, more or less, as he can, this year, and to have the use of the same for the term of three years, or for three crops; and what he clears during the second and third years, he is to have and use upon the same terms. The said McDaniel is to inclose the lands he clears with a good and lawful fence; and is to sell all the wood he can from the clearings, and to pay me one-half the proceeds of sale. The lease [is] to commence running from the 1st January, 1878; and at the expiration of three years, the said McDaniel is to give possession of the first year's clearing, if he does not choose to rent upon such terms as we could agree upon; and so, of the clearings of the other two years. In case I should sell said lands before the expiration of said lease, the said McDaniel is to give possession, by being paid a reasonable valuation for the unexpired term of said lease; provided, also, that the said McDaniel shall not be required to give possession, or surrender the lease, in the spring of the year, after having made arrangements for a crop on said lands, unless said lease should be surrendered upon terms agreed on by both parties. The said McDaniel is to have the refusal of renting the old lands." (Signed, "F. L. BRANDON, agent for *Milly Smith;*" and also signed by said McDaniel, and attested by two witnesses.)

The defendant offered this lease in evidence, and the plaintiffs objected to its admission, "because there was no proof of its execution, and no proof that said Brandon was the agent of Milly Smith, and was authorized to execute said lease." The court sustained the objection, and excluded the lease. "The defendant then offered in evidence a bill in chancery, filed against him by said plaintiffs, with the exhibits thereto; to the introduction of which the plaintiffs objected, but the court overruled the objection, and allowed said bill and exhibits to be read to the jury as evidence; and plaintiffs then and there duly

excepted." This bill was filed on the 5th December, 1878, and was verified by the oath of one of the plaintiffs. Its object and prayer was to enjoin and restrain the defendant, said McDaniel, from cutting timber, or otherwise committing waste on the lands sued for, which the complainants alleged they had purchased from said Milly Smith on the 14th November, 1878, taking her bond conditioned to make them a good title on the payment of the purchase-money, which bond was made an exhibit to the bill. The lease to McDaniel was also made an exhibit to the bill, and its execution was thus alleged in the bill: "Heretofore, on the — day of April, 1878, one Milly Smith was seized and possessed in fee of certain lands situated in said county, and hereinafter more particularly described; and being so seized, by a certain indenture, or contract, bearing date the 9th April, 1878, made between said Milly Smith and said Fleming McDaniel, did demise, let or lease to said McDaniel all that portion or parcel of land unimproved, known as the Gray place," &c. The bill alleged, also, that the complainants "have demanded possession of said property so described as aforesaid, and although they have tendered to said lessee, McDaniel, a fair valuation for said improvements, or any improvements, and a reasonable valuation for the unexpired term of said lease, he refused to surrender the possession to your orators, and still refuses; and said McDaniel is insolvent, and unable to respond in damages for any injury, trespass, or waste committed on said lands."

"The defendant then testified as a witness for himself, as follows: 'I took possession of said lands in the *fall* (?) of 1878, in February. I cleared six acres of said land in the bottom in 1879, in the summer.' Plaintiffs objected to said last answer as evidence, because irrelevant under the issue, and excepted to the overruling of their objection. The defendant's counsel then asked him, 'Do you remember the day you put Mr. Callan in possession of the land in controversy? if so, state it.' Plaintiffs objected to this question, because it was illegal, irrelevant, and leading, and because it embodied a presumption; which objection being overruled by the court, the defendant answered, that he put said Callan in possession, or surrendered possession of said twenty acres of bottom land to him, some time last year. Defendant then stated, on cross-examination, that he took possession of the land in controversy in the spring of 1878. He was then handed a writing, and was asked if he signed and swore to said writing; and answered, that he did." (This writing is not set out, nor does the bill of exceptions show what it was.) "M. M. Russell was then introduced as a witness, and testified that defendant cleared about six acres of the lands in controversy in the summer of 1879. Plaintiffs' coun-

[Callan v. McDaniel.]

.sel handed said Russell an affidavit, and asked him if he signed and swore to said paper ; and he answered, that he did." This .affidavit, which was afterwards offered in evidence by the plaintiffs, was sworn to and subscribed on the 22d October, 1879, and seems to have been used in the chancery cause, in defense of some motion or proceeding for a contempt of the injunction, though that fact is not stated. In it said Russell stated on oath that, "of his knowledge and belief, said McDonald has not cut, felled and destroyed any timber upon said land, outside of his clearing, either on or about the 4th day of August, 1879, or at any other time, in contempt of the order of this honorable court ; nor has he entered upon said tract, nor, with others employed by him, cut, felled or destroyed any timber ; nor does he believe that said McDaniel has ever avowed any intention to continue to clear up said lands." When this affidavit was offered in evidence by the plaintiffs, the defendant objected to its admission, and the court sustained the objection ; to which ruling the plaintiffs duly excepted. The record does not state for what purpose the affidavit was offered, nor on what ground it was objected to and excluded.

The plaintiffs offered in evidence, in rebuttal, the writ of injunction issued in the chancery cause, by which the defendant was restrained "from committing or permitting any further waste or destruction of timber, and from cutting, clearing or felling timber on said lands ;" which writ was issued on the *fiat* of a circuit judge, on the filing of the bill, and was served on the defendant on the 13th December, 1878. The court excluded the writ as evidence, on motion of the defendant, and the plaintiffs excepted. The bill of exceptions does not state the purpose for which this evidence was offered, nor the ground of objection to it. One of the plaintiffs being examined as a witness, he was asked by defendant, on cross-examination, " Did not defendant clear up, in the summer of 1879, some six acres of land in the bottom?" The plaintiff objected to this question, "because irrelevant, and because the defendant could not claim a benefit from acts done after he was enjoined from doing them, and after plaintiffs' purchase of the land." The court overruled the objection, and the plaintiffs reserved an exception ; and the witness answered the question in the affirmative. The plaintiffs offered in evidence a paragraph contained in the defendant's answer to the bill in chancery, in which he stated that he had cleared up and put in cultivation, in the spring of the year 1878, "a large body of said lands, known as 'river bottom lands,' to-wit, about twenty-eight acres ;" and the court allowed the defendant, in rebuttal, to introduce his entire answer ; to which ruling admitting it the plaintiffs excepted.

"This being all the evidence," the court gave the following

[Callan v. McDaniel.]

charges to the jury, on the request of the defendant: (1.) "If the jury believe, from the evidence, that the defendant delivered or surrendered said lands, or that plaintiffs were in possession of all that portion of the lands they were entitled to under their purchase, before this suit was brought, then plaintiffs can not recover." (2.) "That before the jury can find for the plaintiffs, they must be convinced from the evidence that plaintiffs were seized and possessed of said lands before the commencement of this suit, and that since said possession accrued defendant dispossessed them." (3.) "That if plaintiffs were, at the commencement of the suit, in possession of all except the lands on which defendant's lease had not expired, then they can not recover." (4.) "That plaintiffs were bound by any leasal contract made by Milly Smith, their vendor, with the defendant."

The plaintiffs duly excepted to each of these charges as given, and then requested the following charges, which were in writing: (1.) "If the defendant relies on a lease, he must prove the existence (?) of that lease, its terms and provisions; and if the lease was executed by an agent, he must show the agent's authority to execute it." (2.) "A lease of Milly Smith's lands, made by F. L. Brandon, would not bind Milly Smith, unless she had empowered Brandon to make such lease." (3.) "The defendant, if he claims under a lease, must prove such lease, and its execution by a person authorized to execute it." (4.) "After the purchase by plaintiffs from Milly Smith, the defendant had no authority to clear additional land, and hold it for three years thereafter, under the lease with Milly Smith." (5.) "When Milly Smith sold to plaintiffs, then the lease to McDaniel ceased to operate further than as to that portion of the land already cleared." The court refused each of these charges, and the plaintiffs duly excepted to their refusal.

All the rulings of the court to which, as above stated, exceptions were reserved, are now assigned as error.

WALDEN & SON, and WATTS & SONS, for appellant.

McSPADDEN, CARDEN & BURNETT, contra.

BRICKELL, C. J.—1. In ejectment, or in the corresponding statutory real action, the plea of not guilty is an admission by the defendant that he is in possession of the premises sued for, unless he accompanies it with a statement upon the record, limiting the extent of his possession. In that event, it becomes an admission of possession only of such part of the premises as is designated in the statement.—Code of 1876, §§ 2692–3. The statute is an affirmation of the 24th rule of practice in the Circuit Courts, in reference to the consent rule in actions of

[Callan v. McDaniel.]

ejectment, which was borrowed from a rule of the King's Bench.—2 Tidd's Pr. 1226; *Bernstein v. Humes*, 60 Ala. 582. It is not pleading which is contemplated, but simply a statement upon the record of the extent of the possession of the defendant, that it may be known for what part of the premises he appears and defends. The statement is sufficient—answers all the purposes for which it is intended—when with reasonable certainty it designates and describes a part, so that it is distinguished from the residue of the premises. If it be vague and uncertain, a motion should be made to strike it from the record, leaving the plea of not guilty to stand an admission of the possession of the entire premises. It is not, like pleading, subject to demurrer. The statement in the present case, to which a demurrer was interposed, is not objectionable for uncertainty or indefiniteness of description of the part of the premises of which possession is admitted. There could be no difficulty in separating that part from the residue of the premises; and the inference is just, that the plaintiffs, who are presumed to know the entire premises, were not left in doubt as to the part for which the defendant appeared to litigate with them the title, or the right of possession.

2. It is unimportant whether the Circuit Court erred or not, in refusing to permit the deed from Milly Smith to the plaintiffs to be read in evidence, without other proof of execution than the certificate of acknowledgment. The execution was afterwards sufficiently proved, and the deed read in evidence, rendering its rejection in the first instance wholly immaterial.

3. There are several objections to questions propounded to witnesses, but the bill of exceptions does not show the evidence which was elicited by them. It may be the answers consisted only of a disavowal of all knowledge touching the matters of which inquiry was made, or were wholly immaterial, or the evidence was favorable to the plaintiffs. There can not be a reversal of a judgment, because improper questions are propounded to witnesses, unless it is shown that in response to them improper evidence was elicited and admitted.

4. The bill in equity filed by the plaintiffs against the defendant, was verified by affidavit. It is true, that a bill in equity, not verified, is regarded as containing rather the suggestions of counsel, than the deliberate statements of the complainant, and is not, in a collateral suit, admissible evidence against him of the facts stated in it.—1 Brick. Dig. 829, § 353. But, when it is verified, because of the solemnity and deliberateness attached to an oath taken in the course of judicial proceedings, a different rule obtains. The bill is then treated as a statement of facts admitted by the complainant, and becomes

[Callan v. McDaniel.]

evidence against him in collateral suits.—*McRea v. Ins. Bank of Columbus,* 16 Ala. 755 ; *McLemore v. Nuckolls,* 37 Ala. 662. The bill with explicitness avers the execution of the lease by Milly Smith to the defendant. That was a material fact, upon which the equity of the bill depended. The averment was, as against the plaintiffs, sufficient evidence of the lease, and of the authority of Brandon, as agent, to execute it.

5. The term of the lease was three years, reserving to the lessee the right to occupy for three years such parts of the premises as he reduced to cultivation each year of the term. The reservation, like a covenant for quiet enjoyment, or a covenant to cultivate the land in a particular manner, or a covenant for a renewal of the lease, runs with the land, and is binding upon the assignee of the reversion.—Taylor's Land. & Ten. § 262. It was, of consequence, proper to permit the defendant to prove that, in 1879, he had cleared six acres of the lands. Of it he was entitled to possession for three years, or a period extending beyond the commencement of the present suit. Nor can we perceive any objection to evidence that, before the commencement of the suit, the defendant had surrendered to the plaintiffs the possession of parts of the premises.

6. The writ of injunction was offered, for the purpose of showing that the lands of which defendant claimed to hold possession were cleared after the issue and service of the writ, and in violation of its mandate. If this be true, the violation of the injunction was a contempt of the Court of Chancery, and could in that court, while the proceedings were *in fieri,* have been punished. But, if the plaintiffs submitted to the violation, suffering the suit in equity to continue in progress, and ripen into a final decree, other courts can not inquire into it collaterally, and visit it with a forfeiture of rights the court of equity may not have been willing to impose. In that court, there are many equitable considerations involved in an application to punish a party for a violation of an injunction while the cause is *in fieri.* The motives of the party obtaining the injunction, the good or bad faith, and the conduct of the party charged with its violation, are all considered. If other courts should intervene, and determine collaterally that there has been the violation of an injunction, the consequences which are to result could not be adjusted as a court of equity would adjust them ; and if the parties aggrieved do not apply to that court, they can not ask other courts to assume its jurisdiction. If the suit in equity has passed into a final decree, and the injunction been perpetuated, the court adjudging the defendant was without right to clear the lands in controversy, the decree would be admissible evidence, and conclusive. That is not, however, the question now presented.

VOL. LXXII.

[Callan v. McDaniel.]

7. There was no conflict between the evidence of Russell on the trial in the court below, and the statements in the former affidavit introduced to impeach him. The two are reconcilable, if they are not corroborating. Impeaching statements, or statements supposed to be impeaching of a witness, are inadmissible, unless they are contradictory of a material statement made by him on the trial. When the two statements are reconcilable, the one can not be received to contradict the other.—1 Whart. Ev. § 558.

8. The plaintiffs having read in evidence a part of the answer of the defendant to the bill in equity, it was the right of the defendant to read the whole.—*Lawrence v. Ocean Ins. Co.*, 11 Johns. 269.

9. The several instructions requested by the plaintiffs touching the execution of the lease, it may be conceded, assert correct legal propositions. But it is obvious, if they had been given, without the aid of additional or explanatory instructions, the attention of the jury would have been withdrawn from the evidence of Brandon's authority to execute the lease. Instructions requested, ignoring or obscuring material evidence, or which would devolve upon the court the duty of giving additional instructions to prevent them from misleading, may be refused. The remaining instructions requested were properly refused. The sale to the plaintiffs did not, of itself, terminate the lease, nor did it terminate the right of the lessee to continue the clearing of the lands. The purchasers could have terminated the lease, and all rights of the lessee under it, by paying him a *reasonable valuation* for the unexpired term. That is the only event upon which the lease stipulated the lessee would surrender possession, if the lessor made sale of the lands during the term. Until the happening of that event, the lease continued in full force, and its covenants were binding upon the assignees of the reversion.

10. There can be no doubt of the correctness of the first, third, and fourth instructions, given at the instance of the defendant. They state simple truisms. The second instruction, it may be, is so expressed, that it had a tendency to mislead the jury. It may have conveyed to them the impression, that the plaintiffs could not recover unless, before the commencement of the suit, they had actual possession of the lands in controversy, and the defendant entered and disposed them; a proposition manifestly erroneous, and which it can not be presumed the court intended to assert. It is capable of the construction that, to maintain the action, the plaintiffs must have been seized—must have had a seizin, giving to them constructive possession, or rather drawing to it the right of immediate possession; and after the seizin, the defendant must have wrong-

[Kelly v. Karsner.]

fully entered, or must have wrongfully remained in possession. Adopting this construction, the proposition asserted is, that a present right of entry and possession on the part of the plaintiffs, and a wrongful possession on the part of the defendant, must concur to support the action. The instruction is very nearly a repetition of the words of the statutory form of complaint, and was, perhaps, drawn from them. The tendency of the instruction to mislead the jury, would have justified the court below in refusing to give it. But the court having given it, if the plaintiffs apprehended injury from it, an explanatory instruction should have been requested, obviating the tendency to mislead. The tendency of instructions given to mislead, is not an error which will avail to reverse a judgment.—1 Brick. Dig. 344, § 129.

We find no error in the record, and the judgment must be affirmed.