(85 South, 789)

### RICHARDSON v. STATE. (7 Div. 13.)

(Supreme Court of Alabama. Jan. 29, 1920.
Rehearing Denied Feb. 14, 1920.)

**1. Homicide ⬡⟶2—Defendant, who shot son-in-law without provocation, guilty of offense.**

If defendant shot his son-in-law merely because he had stopped to speak to and caress his child, his wife having separated from him and taken the child to her father's house, defendant was guilty of some offense.

**2. Homicide ⬡⟶116(4), 122—Defendant had right to protect daughter from son-in-law, and to repel assault, if he had reasonable apprehension of danger.**

If defendant's son-in-law attempted forcibly to take his child from its mother, who had left her husband and was living with her father while suing for divorce, and in doing so violently assaulted his wife, defendant's daughter, defendant was justified in interfering to protect his daughter, and if deceased, to murderously assault defendant, attempted to draw a pistol, or defendant reasonably and honestly thought so, he had a right to act in defense of himself, if free from fault in provoking the difficulty.

**3. Criminal law ⬡⟶429(2)—Pleadings always admissible to show their existence, fact of suit, and issues.**

The pleadings in an action at law or suit in equity are always admissible to show their existence, the fact that the suit has been filed, and the issues involved.

**4. Homicide ⬡⟶195—Pleadings filed by decedent, defendant's son-in-law, against wife in her divorce suit, admissible to show decedent was forcibly contending for possession of child.**

In prosecution of defendant for killing his son-in-law, who had come up to defendant and his family on the street while viewing a celebration. and approached his (the son-in-law's) child, whose mother had gone to live with defendant, her father, while suing for divorce, answer and cross-bill filed by deceased son-in-law in the wife's divorce action, in which he charged her with adultery and averred she was unsuitable to have the custody of the child, held admissible to show that deceased was contending for the custody of the child for reasons which might lead him to take it by force, though the original bill, having no such tendency, was inadmissible.

**5. Criminal law ⬡⟶459—Testimony as to relative position of parties deduced from wounds inadmissible.**

In a prosecution for homicide, it was not permissible for a witness, from his mere examination of wounds on decedent's body, to testify as to the relative position of the parties at the time of the shooting.

**6. Homicide ⬡⟶196—Testimony as to whether physician called to attend defendant's daughter was called, because of injuries inflicted by deceased was competent.**

In prosecution for killing defendant's son-in-law as defendant claimed in defense of his daughter, who had separated from her husband and was suing for divorce, testimony as to whether or not a physician was called to attend the daughter, decedent's wife, on account of the injuries alleged to have been inflicted on her by her husband at the time he was killed, held admissible on the issue of whether defendant killed in defense of his daughter.

**7. Criminal law ⬡⟶719(3)—Statement of solicitor in prosecution for homicide improper, as not based on evidence.**

In a prosecution for killing defendant's son-in-law, as defendant claimed, in defense of his daughter, living apart from her husband and suing for divorce, statement of solicitor in argument that in many murder cases he had tried he had heard "this hip pocket defense come up" held improper, as not based on evidence.

**8. Criminal law ⬡⟶789(18)—Charges on acquittal for reasonable doubt as to a single fact properly refused.**

In a prosecution for killing defendant's son-in-law, as defendant claimed; in defense of his daughter, living apart from her husband and suing for divorce, charges that, if there was a single fact proved, inconsistent with defendant's guilt, sufficient to create a reasonable doubt in the jury's minds, they should acquit, were properly refused.

**9. Homicide ⬡⟶116(4)—One relying on self-defense must show circumstances reasonably producing belief of imminent peril.**

One charged with homicide and relying on the doctrine of apparent imminent peril must show that the circumstances by which he is surrounded were sufficient to impress the mind of a reasonable man that he was in imminent peril.

**10. Homicide ⬡⟶300(2)—Use of "actionable" for "actual," in requested charge on self-defense, justified refusal.**

In a prosecution for killing defendant's son-in-law, as defendant claimed, in defense of his daughter, living apart from her husband and suing for divorce, use of the word "actionable" for "actual," in charge on self-defense requested by defendant, justified its refusal.

**11. Homicide ⬡⟶300(7), 301—Charges on justification of defendant in carrying concealed pistol abstract.**

In a prosecution for killing defendant's son-in-law, defendant relying on self-defense or defense of his daughter, separated from her husband and suing for divorce, question of defendant's justification in carrying a concealed pistol was not a pertinent issue, and charges thereon were abstract.

**12. Homicide ⬡⟶300(13), 301—Instructions on self-defense and defense of daughter failing to stipulate for defendant's freedom from fault properly refused.**

In a prosecution for killing defendant's son-in-law, as defendant claimed, in defense of his daughter, living apart from her husband and suing for divorce, charges requested by defendant that he was entitled to kill in self-defense, or defense of his daughter, but failing

---

⬡⟶For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

to stipulate for defendant's freedom from fault, were properly refused.

**13. Homicide ⬅➡300(2)—Charges on self-defense using "attached" for "attacked" properly refused.**

In a prosecution for killing defendant's son-in-law, as defendant claimed, in defense of his daughter, living apart from her husband and suing for divorce, charges requested by defendant on the issue of defense of himself or daughter, using the word "attached" for "attacked," were properly refused as faulty.

**14. Criminal law ⬅➡761(6)—Charges assuming matter in dispute properly refused.**

In a prosecution for killing defendant's son-in-law, as defendant claimed, in defense of his daughter, living apart from her husband and suing for divorce, charges requested by defendant, assuming there was a difficulty between deceased and his wife, as to which the evidence was in dispute, were properly refused as invasive of the jury's province.

**15. Homicide ⬅➡300(4)—Requested charge on self-defense argumentative.**

In a prosecution for killing defendant's son-in-law, as defendant claimed, in defense of his daughter, living apart from her husband and suing for divorce, requested charge on self-defense *held* properly refused as argumentative.

**16. Homicide ⬅➡300(14)—Requested charge on self-defense, failing to stipulate as to honest belief of peril, properly refused.**

In a prosecution for killing defendant's son-in-law, as defendant claimed, in defense of his daughter, living apart from her husband and suing for divorce, requested charge on self-defense, failing to stipulate for defendant's honest belief that he was in imminent peril, was properly refused.

**17. Homicide ⬅➡300(2)—Requested charge on self-defense erroneous for misuse of words.**

In a prosecution for killing defendant's son-in-law, as defendant claimed, in defense of his daughter, living apart from her husband and suing for divorce, requested charge that a person has the right to use such force as may be reasonably necessary to defend himself *held* properly refused, on account of its use of the words "as is due," in lieu of "as it does."

McClellan, J., and Anderson, C. J., and Thomas, J., dissenting.

Appeal from Circuit Court, Calhoun County; Hugh D. Merrill, Judge.

James Richardson was convicted of murder, and he appeals. Reversed and remanded.

The following charges were refused to the defendant:

(1) I charge you, gentlemen of the jury, that if there is one single fact proved to the satisfaction of the jury which is inconsistent with the defendant's guilt, that is sufficient to create a reasonable doubt in your minds, then the jury should give the defendant the benefit of the doubt and acquit him.

(2) I charge you, gentlemen of the jury, that the law of Alabama gives a person the same right to use such force as may be reasonably necessary under the circumstances by which he is surrounded to protect himself from great bodily harm as is due to prevent his life being taken; he may excusably use this necessary force to save himself from any felonious assault.

(3) I charge you, gentlemen of the jury, that if at the time of the firing of the fatal shot by Mr. Richardson he entertained an honest belief that he was in danger of suffering death or dangerous bodily harm at the hands of John Baxter, and Mr. Richardson was without fault in bringing on the difficulty with John Baxter, and there was no reasonable means of retreat without increasing his danger, then he had a right to shoot Baxter under three conditions, and it would be your duty to acquit him.

(4) I charge you, gentlemen of the jury, that if you believe that the defendant had the pistol on the night of the tragedy for the means only of defending himself against unlawful violence at the hands of John Baxter, and not for offensive purposes, then he would have been justified in carrying the pistol on the occasion of the tragedy.

(5) I charge you, gentlemen of the jury, under the laws of Alabama, where a person has a good reason to apprehend an attack from the hand of another he is justified in carrying a pistol on his person, even though he carry it concealed, provided he carry such a pistol for defensive and not offensive purposes.

(6) I charge you, gentlemen of the jury, that if you find from all the evidence in the case that John Baxter had threatened the life of the defendant or his wife, the daughter of the defendant, as testified to by the witnesses in the case, and you are convinced by this testimony that he had good reason to apprehend an attack from John Baxter, then he would have been justified in carrying the pistol, on the night of the tragedy, in his pocket, as testified in the case.

(7) The court charges the jury that if the defendant shot under a bona fide belief that his life was in danger, and that under all the circumstances he had reasonable cause to believe that he was in imminent danger at the moment the shot was fired, it would be immaterial whether there was such actionable danger or not.

(8) I charge you, gentlemen of the jury, that if there is one single fact proved to the satisfaction of the jury which is inconsistent with defendant's guilt, that is sufficient to pass a reasonable doubt in your minds, then the jury should give the defendant the benefit of the doubt and acquit him.

(9) I charge you, gentlemen of the jury, that if the defendant did not provoke the difficulty or bring it on, and the deceased made an overt act or attempt to reach his hip pocket for a weapon, and he acted in so doing in such a manner as to indicate to a reasonable man that his intention was to do great bodily harm to the defendant, and there was no reasonable mode of escape or retreat without increasing his danger, and the defendant honestly believed he was in danger of great bodily harm at the

hands of the deceased, then the defendant was authorized to anticipate the deceased and kill him, and if the jury has a reasonable doubt on this proposition they must find defendant not guilty.

(10) The law does not impose upon a person attacked with murderous ·intent the duty to retreat, unless the evidence in the case shows that the person could have retreated without increasing his peril, and if you find from all the evidence in the case that John Baxter made such overt acts or demonstrations with reference to procuring a pistol from his hip pocket as was calculated to induce in the mind of a reasonable man the honest belief that he was in great danger, in consequence of such demonstrations, of receiving grievous bodily harm or death, and such demonstration did induce in the mind of Mr. Richardson such belief, that is, that he was about to receive from the hands of John ·Baxter grievous death or grievous bodily harm, and he was free from fault in provoking the difficulty between himself and John Baxter, then he would have the right to have shot John Baxter, and it would be your duty to acquit him.

(11) If John Baxter, the deceased, threatened to kill his wife, Maud Baxter, the daughter of defendant, Richardson, and that on the night of the tragedy on Noble street, resulting in the death of John Baxter, Maud Baxter, his wife, was wholly free from fault in bringing on the difficulty with him, and there was no reasonable mode for her to retreat without increasing .her peril, and that John Baxter had made towards her an overt act or attempt at assault of such a nature as would have produced in the mind of a reasonable person that, as a result of such impending assault or threatened assault at the hands of John Baxter, his wife, the daughter of the defendant, was in danger of receiving death or grievous bodily harm, and that the defendant witnessed these overt acts on the part of John Baxter, and was honestly induced to believe in consequence of the same that Maud Baxter was in danger as above explained, then defendant, Richardson, in order to save his daughter from death or grievous bodily harm, had the right to anticipate John Baxter, and fire first, and slay him, and if these be the facts of this case your verdict must be not guilty.

(12) If the jury are reasonably satisfied from the evidence that neither the defendant nor Mrs. Baxter knew anything at all about John Baxter coming on to Noble street the night of the killing, or had any information that he would be there, and if the Richardson family went to the point on Noble street where the killing occurred, accompanied by Mr. Richardson and Mrs. Baxter, and were standing together in a quiet, orderly, and peaceable manner, and that John Baxter had previously threatened to kill Mr. Richardson, or Mrs. Baxter, and the little Baxter child, and that he approached them at the time and place of killing, and that neither Mr. Richardson nor Mrs. Baxter brought on, provoked, or produced the difficulty, and that the deceased at the time and under the conditions placed his hand in his pocket, or reached his hand in the direction of his pocket, in a threatening way, as if to draw a weapon, and that he did so, if you find from the evidence he did so, in a manner reasonably calculated to produce in the mind of a reasonable man an honest and bona fide belief that he was about to receive death or grievous bodily harm from the deceased, and there was no reasonable mode of escape without increasing the defendant's peril, then the defendant had the right to shoot first, and defendant would have had the right to act upon the reasonable appearance as above explained, whether John Baxter had a pistol in his pocket or not, and if he shot him under these conditions, for either the protection of himself, or Mrs. Baxter, or the little Baxter child, it is your duty to acquit him.

(13) I charge you, gentlemen of the jury, that the undisputed proof in the case shows that Maud Baxter was the daughter of defendant Richardson, if Maud Baxter was wholly free from fault in provoking the difficulty, and there was no reasonable means for her retreat, without increasing her danger, and the actions of John Baxter, either real or apparent, towards her, were such as to have induced in the mind of a reasonable person that they were about to receive death or grievous bodily harm at the hands of John Baxter, and Mr. Richardson observed such conduct on his part, and such conduct induced in the mind of Mr. Richardson the honest and bona fide belief that his daughter was about to be attacked, under these conditions, under the law of Alabama, he had the same right to have defended her as he would have to defend himself under similar conditions, and he would have had the right to have anticipated John Baxter, and fired first; and if you find from the evidence in the case that such were the facts, then it is your duty to find the defendant not guilty.

(14) I charge you, gentlemen of the jury, that in the present case it is for you to determine from the testimony which party, the deceased or the defendant, commenced the affray. There is a dispute in the testimony relating to the conduct of the parties immediately preceding the fatal act. There is a dispute in the testimony as to whether the deceased was the aggressor, or made hostile demonstrations towards the defendant, prior to the time he was shot or not; the threats alleged to have been made by the deceased against the defendant have been admitted in testimony for the purpose of enabling the jury to determine, from such threats, whether or not as a matter of fact the deceased did make a demonstration or overt act towards the defendant, at the time of the killing, of such character or nature as to induce in the mind of a reasonable man that he was about to receive death or grievous bodily harm in consequence; and if you find from all the evidence in the case, including the threats testified about, that the conduct of the deceased at the time of the killing produced in the mind of Mr. Richardson the honest belief that he was then in danger of being killed or receiving grievous bodily harm at the hands of the deceased, and he was free from fault in provoking the difficulty, and there was no way for him to have retreated without increasing his danger, then I charge you, gentlemen of the jury, that this gave Mr. Richardson the right to shoot first, and, if he shot John Baxter under these conditions I have outlined, his act was justified by the law of Alabama, and it is your duty to acquit.

Ross Blackmon, of Anniston, for appellant.

The witness should have been permitted to say, from seeing the wounds, as to the position of the deceased when shot. 147 Ala. 10, 41 South. 992; 118 Ala. 125, 24 South. 111; 106 Ala. 30, 17 South. 456. The defendant should have been permitted to show that a physician was called to see his daughter, because of the effects of the blows. 91 Ala. 64, 9 South. 171; 91 Ala. 108, 9 South. 236; 106 Ala. 1, 17 South. 328. The bill for divorce and answer should have been admitted. 60 Ala. 1; 197 Ala. 183, 72 South. 401; 71 Ala. 377; 55 Ala. 25; 90 Ala. 599, 8 South. 670; 122 Ala. 78, 25 South. 10; 139 Ala. 103, 35 South. 1000. The remarks of the solicitor were highly improper. 68 Ala. 476; 136 Ala. 30, 24 South. 188; 133 Ala. 62, 31 South. 953; 121 Ala. 12, 25 South. 744; 194 Ala. 17, 69 South. 941, 2 A. L. R. 509; 159 Ala. 52, 48 South. 662; 197 Ala. 193, 72 South. 316. Counsel discuss the refused charges, but without further citations of authority.

J. Q. Smith, Atty. Gen., Lamar Field, Asst. Atty. Gen., and S. W. Tate, of Anniston, for the State.

A witness may not draw a conclusion as to the position of a person from an observation of a wound. 147 Ala. 10, 41 South. 992; 203 Ala. 162, 82 South. 192. There was no error in not permitting it to be shown that Mrs. Baxter had called in a physician. 91 Ala. 69, 9 South. 171. The court properly excluded the bill for divorce and the cross-bill. 79 South. 196; 16 Ala. App. 503, 79 South. 201. The remarks of the solicitor were not prejudicial. 20 South. 434; 16 Ala. App. 61, 75 South. 267; 16 Ala. App. 514, 79 South. 507; 80 South. 158. Counsel discuss the refused charges, but without further citation of authority.

BROWN, J. The homicide of which the appellant stands convicted occurred on November 11, 1918, on Noble street in the city of Anniston, during the celebration by the people of that city of the signing of the armistice agreement. The deceased, John Baxter, was a son-in-law of the appellant. About two months before the homicide Baxter's wife had separated from him, taking with her their only child, a boy about four years of age, and was then living at her father's home as a member of his family. Mrs. Baxter, some time previous to the homicide, had commenced proceedings against her husband for divorce, which was then pending in the courts; and the evidence offered by the state shows that appellant had been giving her assistance in the prosecution of that suit. About an hour before the killing, the appellant and the members of his family, consisting of his wife, Mrs. Baxter and her child, and appellant's two unmarried daughters, left their home, and had gone upon the streets to engage in the celebration then in progress, and while they were standing on the sidewalk, watching the celebration, the deceased approached the child, either to speak to and caress him, or seize and abduct him.

The state's theory, as developed by the tendencies of the evidence, is that deceased's purpose in approaching the child was to speak to and caress him, and while in the act of doing so, and without other provocation, appellant ordered him to pass on, and immediately fired upon him, inflicting the wounds from which Baxter died a few days thereafter. On the other hand, the defendant's contention, as the evidence offered by him tends to show, is that the purpose of Baxter was to seize and take the child from its mother, and in doing so he violently assaulted her by striking her one or more blows in the face, which rendered her unconscious, and thereupon appellant interposed in defense of his daughter, and as Baxter made a demonstration as if to draw a pistol from his hip pocket to assault appellant, appellant drew his pistol and fired. The appellant also offered evidence to the effect that, when Mrs. Baxter separated from her husband and declared her intention to return to her father's home, Baxter made the threat that if she did he would kill her, the baby, and appellant. Evidence is also offered to the effect that, after the separation, the deceased, on one occasion, had gone to the defendant's house to see his child, and that permission to see it was denied him by defendant's wife.

This statement of the different phases of the evidence is sufficient to show that the question as to who was the aggressor on the occasion of the fatal tragedy was in sharp conflict, and involved the motive or purpose of the deceased in approaching the child. As tending to shed light on this question, the defendant offered as evidence the answer and cross-bill filed by the deceased in the divorce action, in which he charged his wife, Mrs. Baxter, with adultery, and averred that she was an unsuitable person to have the custody of the child, and prayed that its custody be taken from her and committed to him. On the objection of the solicitor, the court refused to admit this evidence.

[1, 2] It is not disputed that the defendant intentionally fired the shot that caused Baxter's death, and if, as the state contends, the defendant shot the deceased because he had stopped to speak to and caress his child, without more, then the defendant is guilty of some offense. On the other hand, if the deceased was attempting to forcibly take the child from its mother, and in doing so violently assaulted her, the defendant was justified in interfering to protect his daughter; and if, in so doing, the deceased, for the purpose of murderously assaulting the defendant, attempted to draw a pistol from his

pocket, or if the circumstances surrounding the parties at the time were such as to induce a reasonable man to believe that such was the purpose of the deceased, and the defendant honestly so believed, he had a right to act in defense of himself, if he was free from fault in provoking or bringing on the difficulty. Therefore the purpose of the deceased in approaching the child was a pertinent inquiry that would naturally address itself to the jury in determining who was the aggressor on the occasion of the homicide. What was said in Gafford's Case is pertinent here:

" 'Whatever tends to shed light on the main inquiry, and does not withdraw attention from such main inquiry by obtruding upon the minds of the jury matters which are foreign, or of questionable pertinency, is, as a general rule, admissible evidence.' In view of the conflicting testimony as to which of the two, deceased or the defendant, was the aggressor in the unfortunate tragedy, would the offered testimony shed any light on that question? Could the jury fairly determine that question, without knowledge of facts which might have exerted an influence upon or supplied the motive to one or the other to become the aggressor?" Gafford v. State, 122 Ala. 54, 25 South. 10.

It only requires the exercise of common sense, in the light of our knowledge of human nature, to see that the offered evidence would have enabled the jury, in determining the issues of self-defense, to view the acts of the deceased from the defendant's standpoint. This evidence throws light, not only upon the motive actuating the deceased, but sheds light on and gives character to his conduct on the occasion in question. Gafford v. State, supra; Ezzell v. State, 13 Ala. App. 156, 68 South. 578; Gibson v. State, 193 Ala. 12, 69 South. 533.

But it is urged that the answer and cross-bill filed by the deceased is denied admissibility as evidence by the case of Ex parte E. C. Payne Lumber Co., 85 South. 9.[1] In that case this court, reviewing the opinion of the Court of Appeals, following the dictum in Callan v. McDaniel, 72 Ala. 96, held that the complaint . in another action filed by the plaintiff against the defendant in that case in her representative capacity as executrix of her husband's will was inadmissible to show the filing of such a suit on the same cause of action as was involved in the case then under consideration; the purpose of the evidence being to discredit the witness Payne, who was president of the plaintiff corporation, and who had testified, contrary to the testimony of the defendant, that material constituting the account sued on was sold directly to her on her order after her husband's death, and not on arrangement with her husband made before his death—the ground on which the inadmissibility of the

complaint was rested being that it was an unverified pleading, and was the act of counsel rather than the act of the party.

In Callan v. McDaniel, supra, the court was dealing with the statements made in a bill in equity filed by the plaintiff, and verified by affidavit, which had been offered as showing admissions against interest; and in the course of the opinion the court said:

"The bill in equity filed by the plaintiff against the defendant, was verified by affidavit. *It is true that a bill, * * * not verified, is regarded as containing rather the suggestions of counsel than the deliberate statements of plaintiff, and is not, in a collateral suit, admissible evidence against him of the facts stated in it.*" [Italics supplied.] 1 Brickell's Dig. 829, § 353.

It will be noted that the italicized utterances are not only dicta, but they do not militate against the admissibility of an unsworn pleading, offered to show the filing of such suit, or the claim asserted therein. In the case of Adams v. McMillan, Ex'r, 7 Port. 73, 85, digested in 1 Brickell's Dig. and cited in Callan v. McDaniel, supra, it was said:

"But we are of opinion that a bill in chancery is not evidence in another suit, *to prove the facts contained in it,* or evidence for any purpose, *except to prove the fact that such a bill was filed.*"

In Davidson v. Rothschild, 49 Ala. 104, it was held that admissions contained in the original complaint, which have been stricken out by amendment, may be proven by the production of the original, or of the copy served on the defendant. And in Ponder v. Cheeves, 104 Ala. 314, 16 South. 145, it was held that the pleadings in an action of ejectment were admissible in a subsequent suit for the purpose of showing a repudiation of the plaintiff's title and the assertion of hostile possession. The following is the rule as stated in Jones on Evidence:

"When parties allege matters of fact in their pleadings, these pleadings may be offered in evidence against such parties as admissions of fact so alleged. * * * When a statement by a party in a pleading other than in the pending suit is offered in evidence, the statement is admissible on the same principle as oral admissions; hence it is not necessary that the parties should be the same, and the pleadings of a party may be received against him in a subsequent suit, although the parties are different. The weight to be given to such admissions depends upon various circumstances. If the pleading is sworn to, and hence is the deliberate and solemn statement of .the party, its admissions may afford evidence against him not easily rebutted. When the allegations are made on information and belief, they are still admissible in evidence, as this fact only detracts from the weight of the testimony. But if the pleadings are not sworn to, and are drawn by counsel, and the allegations have not been expressly directed or approved by the party, they may be

---

[1] 203 Ala. 668.

of little significance. Indeed, under the former practice it was held that bills in chancery not sworn to were not admissible, *except to prove such a fact as their own existence, or the commencement of a suit, or what the facts in issue were.* They were rejected as admissions, on the ground that they consisted largely of the suggestions of counsel, so framed as to obtain an answer under oath. And the pleadings in actions at law have also often been rejected as admissions, when not shown to have been approved or directed by the party himself. Many of the cases holding that pleadings were inadmissible as admissions were based on the theory that most of the allegations were merely pleader's matter—fiction stated by counsel and sanctioned by the courts. The whole modern tendency is to reject this view, and to treat pleadings as statements of the real issues in the cause, and hence as admissions of the parties, having weight according to the circumstances of each case. But some of the authorities still hold that if the pleading is not signed by the party there should be some proof that he has authorized it." Jones on Evidence, § 272.

According to Greenleaf on Evidence (1 Greenleaf [16th Ed.] § 186, subd. 3):

"The true rule is that formal allegations are presumed to be made by the attorney on general instructions and without the personal knowledge of the client; but particular and specific allegations of matters of action or defense, which cannot be presumed to have been made under the general authority of the attorney, but under specific instructions to him from the client, are competent evidence against the client."

2 Wigmore on Evidence, § 1066, supports their admissibility, as does 2 Chamberlayne on Evidence, §§ 1248-1250.

[3] The authorities seem to be uniform that the pleadings in an action at law or a suit in equity are always admissible for the purpose of showing the existence of such pleading, the fact that such suit has been filed, and the issues involved, and for the purposes of this case that is all that is necessary. Jones on Evidence, supra; 2 Chamberlayne on Evidence, § 1248.

[4] The evidence offered was admissible to show that the deceased was contending for the custody of the child for reasons which might prompt him to take it by force under such circumstances as existed on the occasion of the homicide in question, and the court erred in sustaining the solicitor's objection to this evidence. Union Refining Co. v. Barton, 77 Ala. 148; Phœnix Ins. Co. v. Moog, 78 Ala. 308, 56 Am. Rep. 31; Slaughter v. Swift, 67 Ala. 498; Ex parte Warsham, 203 Ala. 534, 84 South. 889.

The original bill in the divorce proceedings, the filing of which had already been shown by the state, had no such tendency, and the objection to it was properly sustained.

[5] It was not permissible for the witness Elder, from his mere examination of the wounds on the deceased's body, to testify as

to the relative position of the parties at the time of the shooting. Rigell v. State, 8 Ala. App. 46, 62 South. 977; Roden v. State, 13 Ala. App. 105, 69 South. 366.

[6] The court did not err in allowing the solicitor to inquire of Mrs. Richardson and Mrs. Baxter as to whether or not a physician was called to attend Mrs. Baxter on account of the injuries alleged to have been inflicted by the deceased at the time of the killing. The evidence on the question as to whether or not the deceased assaulted Mrs. Baxter was in dispute, and this evidence tended to shed light on this question. Newman v. State, 160 Ala. 102, 49 South. 786.

[7] The statement of the solicitor in argument, "that in the many murder cases that I have tried, I have heard this hip pocket defense come up," was not based on any evidence in the case, was improper, and should have been excluded by the court by positive instructions. The reason for excluding such statements of counsel, and the promptness and positiveness of the instructions to be given to the jury under such circumstances, has been so often stated that we deem it unnecessary to repeat the rule. Cross v. State, 68 Ala. 484; Chambers v. State (Ala. App.) 84 South. 638; Wolffe v. Minnis, 74 Ala. 386; B. R., L. & P. Co. v. Drennen, 175 Ala. 338, 57 South. 876, Ann. Cas. 1914C, 1037.

[8-10] Charges 1 and 8 were properly refused. Moss v. State, 190 Ala. 15, 67 South. 731. One relying on the doctrine of apparent imminent peril, must show that the circumstances by which he is surrounded were sufficient to impress the mind of a reasonable man that he is in imminent peril. Charge 3 pretermits these elements, and was properly refused. Cain v. State, 16 Ala. App. 303, 77 South. 453; Carroll v. State (Ala. App.) 81 South. 853, and authorities there cited. The use of the word "actionable" for "actual," in charge 7, justified its refusal.

[11] The question of the justification of defendant carrying a concealed pistol was not a pertinent issue in this case, and therefore charges 4, 5, and 6 were abstract.

[12] Charges 9 and 12 pretermit the defendant's freedom from fault. Crawford v. State, 112 Ala. 1, 21 South. 214; Harris v. State, 96 Ala. 24, 11 South. 255; Baldwin v. State, 111 Ala. 11, 20 South. 528.

[13] Charges 10 and 13, by the use of the word "attached" for "attacked," were faulty, and therefore properly refused.

[14-16] Charges 11 and 12 assumed that there was a difficulty between the deceased and his wife, as to which the evidence was in dispute, and these charges were invasive of the province of the jury. Charge 14 is argumentative. Charge 15 pretermits defendant's honest belief that he was in imminent peril. Carroll v. State, supra.

[17] Charge 2, refused to the defendant, undertakes to state the proposition of law ap-

proved in Twitty v. State, 168 Ala. 59, 53 South. 308 [charge 12]; but the use of the words "as is due" in lieu of "as it does," in the charge, justified its refusal.

The other questions presented have been examined, but we deem further discussion unnecessary. For the error of the court below in sustaining the objection interposed by the solicitor to the introduction in evidence by the defendant of the answer and cross-bill in the divorce proceedings, the judgment will be reversed, and the cause remanded.

Reversed and remanded.

SAYRE, SOMERVILLE, and GARDNER, JJ., concur.

ANDERSON, C. J., and McCLELLAN and THOMAS, JJ., dissent.

McCLELLAN, J. (dissenting). On November 11, 1918, the appellant shot his son-in-law, John Baxter, who a few days later died from his wounds. Read most favorably to the accused, the evidence for defendant put forward this defense only: That Baxter approached a family party on an Anniston street and undertook to take his (Baxter's) four year old child from its mother or its grandmother (defendant's wife); Mrs. Baxter having left her husband, the deceased, about two months before the shooting and returned to the home of her father, this defendant; that Mrs. Baxter resented or resisted this effort of her husband, the deceased, to take the child; that thereupon Baxter struck Mrs. Baxter two or three times in the face; that defendant seeing this, remonstrated with Baxter; and that Baxter thereupon made a motion to his hip pocket, as if to draw a pistol, whereupon defendant shot him twice, once in the thigh, and once in the abdomen, the latter shot causing his death. The thus asserted defense was discredited by the jury. There was abundant evidence that, if credited, warranted that conclusion; the prosecution's contention being that Baxter innocently approached and stopped to see his four year old child, standing on the street in the crowd, and while in the act of fondling his child—whom Mrs. Baxter had two months before taken with her to the defendant's home, where Baxter had been denied the privilege of seeing the child—defendant shot Baxter at a time when Baxter was neither threatening nor menacing any one and was without weapon of any kind. The material issues were, of course, for the jury to decide. The trial was free from any semblance of error, unless, as the majority of the court hold in the opinion ante, the court erred in refusing, upon the state's objection, to permit the introduction in evidence by the defendant of the unsworn answer and cross-bill of Baxter to the original bill for divorce filed by Mrs. Baxter against him; it being signed alone by Baxter's (the deceased's) solicitors, his name not being affixed thereto in any way.

The ruling of the trial court, in excluding that pleading, was fully justified. That action of the trial court had been often approved here, and its correctness never doubted. The following decisions, pointedly invoked by the facts presented for review, so conclude: Stetson v. Goldsmith, 30 Ala. 602, 607, Judge Stone writing; McRea v. Ins. Bank, 16 Ala. 755, 758, 759, Dargan, C. J., writing; Durden v. Cleveland, 4 Ala. 225, 227, Judge Goldthwaite writing; McLemore v. Nuckolls, 37 Ala. 662, 672, A. J. Walker, C. J., writing; Cooley v. State, 55 Ala. 162, 164; Callan v. McDaniel, 72 Ala. 96, 103, 104, Brickell, C. J., writing; Ex parte Payne Lumber Co., 85 South. 9,[2] decided a few days ago on the apt and controlling authority of Callan v. McDaniel, supra. In Cooley v. State, supra, Judge Stone said:

"Bills in equity, not verified by the complainant, are regarded as the suggestions of counsel, and are not evidence of any fact alleged in them, between the same, or other parties, in another suit."

That was the pronouncement in Callan v. McDaniel, supra. That this declaration in these among the other above cited decisions was not dicta is obvious. Aside from other considerations, reference to the personnel of this court at the times Callan v. McDaniel and its several predecessors were decided, as well as to the authorship of the opinions in those decisions, should be enough to demonstrate that something more than the statements of individual compilers, predicated of the deliverances of some courts in other jurisdictions, is necessary to destroy the authority of what our learned elders have, without qualification, so often aptly pronounced. To undertake at this late day to conform the law of decided cases in this state to what text-writers or other courts assert to be the rule elsewhere, is but to superimpose juristic chaos.

The trial court observed the rule of these decisions in this instance. These decisions should be accepted as authority or candidly overruled, in which latter event some reason should be stated for so abrupt a departure from what has been regarded for generations as a settled rule of law; and it might be suggested, by the way, that, if this old and long-observed rule is finally repudiated, attorneys will be subjected to a new, undeserved, and grave burden of responsibility for their acts and statements—a new visitation upon them of the law of principal and agent.

The decisions in Davidson v. Rothschild, 49 Ala. 104, and Ponder v. Cheeves, 104 Ala. 307, 16 South. 145, are without any application to the question under consideration. In the former the original pleading, before amendment

---

[2] 203 Ala. 668.

of the complaint, *in the same suit between the same parties,* was received as evidence; this upon the stated theory that "what is admitted in the pleadings need not be *proved*" (italics supplied). The novelty of the application there made of the familiar rule quoted, viz. that, because an admission in pleading need not be proved, *proof* of it was admissible, may at some other time evoke judicial consideration. A number of the cases before cited were decided after the deliverance in Davidson v. Rothschild, supra, and no account was taken of it, any more than it took account of previous well-considered pronouncements, also above cited. The want of application of Ponder v. Cheeves, supra, to the question now presented, is correctly indicated by the statements in the facts recited and in headnote 1, following the opinion, that the pleading in the previous (second) action—Code, § 3858, and annotation—of ejectment, between the *same parties* for the *same land,* were receivable in evidence. The opinion appears to have entirely overlooked the point taken by counsel for appellant, as upon some of the authorities above cited, since no allusion or response whatsoever was made to appellant's brief on this point and no purpose to overrule previous adjudications was manifested. Whatever may be the value vel non of these two cases in other circumstances, they cannot apply here, for the reason that in the present prosecution the appellant was not a party to the Baxter divorce case, and the present prosecution for murder is in no legal sense related to that divorce case.

Another conclusive reason against the imputation of error to the trial court in this ruling is that the "answer cross-bill" is without any possible relevancy to the defense asserted in the evidence offered by the defendant. The majority view, affirming error, is that the answer cross-bill "would have enabled the jury, in determining the issues of self-defense, to view the acts of the deceased from the defendant's standpoint"; that it was serviceable on the issue as to "who was the aggressor"; that it "was admissible to show that deceased was contending for the custody of the child * * * by force under such circumstances as existed on the occasion of the homicide in question." This "answer cross-bill" is set out in the transcript. Quite naturally, there is not a word in it that bears the remotest connection with or reference to the subsequent shooting of Baxter by appellant. It expressed no threat. It positively denied the charge of cruelty made by Mrs. Baxter in her original bill. It charged Mrs. Baxter with acts of adultery during defined periods, while they lived together and since their separation, and with a man named therein. It charged that she beat their child unmercifully, that she was not a proper person to have custody of their child, and that he had not been permitted to see the child, either by his wife or the wife of the appellant. It was prayed therein that he be allowed to see the child, toward whom, it was averred, he entertained the "greatest affection," that he be given its custody and permitted to contribute to its wants, and that the bonds of matrimony be dissolved. Deceased had been impleaded by his wife. He thus answered, denying her charges, and sought affirmative relief on the grounds stated. What bearing could that pleading have upon the inquiry who was the aggressor, or upon the issue whether this defendant killed Baxter in self-defense? The fact of their separation and the pendency of this divorce case had been already proven. It was never in dispute. The appellant himself testified (Transcript, pages 54, 55):

"The state of my feelings towards John Baxter at that time, prior to the time that he made this assault on my daughter [i. e., the occasion when he shot Baxter], was all right. * * * I was not mad at John Baxter, up until I saw him strike Mrs. Baxter on Noble street; no hard feelings. My daughter had came home and told me all the trouble; but that didn't make me mad, and I never did get mad at him until I saw him strike my daughter that night."

Even the details of a former difficulty between deceased and appellant, at the time this "answer cross-bill" was filed, would not have been admissible; much less can it be soundly held that the details of a legal controversy, asserted in pleadings, between deceased and his wife, were admissible in this prosecution.

If it should be assumed, in the face of repeated decisions in immediate point, that Baxter's pleading was admissible for the limited purpose of showing the mere fact of the pendency, or his contest, of the divorce case (the majority opinion would admit it for all purposes, without limit), the trial court did not err in excluding it, for "where evidence, admissible for one or more purposes, * * * is offered without restriction or limitation to the purpose for which it is admissible, and the objection is general, the judgment will not be reversed, whether the court sustains or overrules the general objection." W. U. Tel. Co. v. Favish, 196 Ala. 4, 13, 71 South. 183, and authorities there cited.

This established rule was reaffirmed in the very recent decision of Archer v. Sibley, 201 Ala. 495, 78 South. 849, 850, where Farley v. Bay Shell Road, 125 Ala. 184, 27 South. 770, likewise in point, was cited. This record recites that "here the defendant offered Baxter's cross-bill for divorce, in words and figures as follows"; no indication as to the purpose for which it was offered being made.

In my opinion, this case was carefully and well tried, and the judgment rendered is free from error. I would therefore affirm it.