14 So.2d 246

## PATE v. STATE.

### 6 Div. 781.

Court of Appeals of Alabama.

Feb. 16, 1943.

Rehearing Denied March 16, 1943.

Affirmed on Mandate June 22, 1943.

Wm. N. McQueen, Atty. Gen., and John O. Harris, Asst. Atty. Gen., for the State.

Tom B. Ward, J. Monroe Ward, and Foster, Rice, Madison & Rosenfeld, all of Tuscaloosa, for appellant.

RICE, Judge.

Appellant was tried under an indictment charging him with the offense of murder in the first degree. He was convicted of the offense of manslaughter in the first degree, and his punishment fixed at imprisonment in the penitentiary for the term of three years.

The date of his conviction was April 11, 1941. Thereafter, on May 9, 1941, his counsel prepared and filed in the circuit court a motion for a new trial. A copy of said motion was furnished on said May 9, 1941, to the Solicitor representing the State, with the statement that said motion would be called to the attention of the court on May 16, 1941.

The motion in question *was* called to the court's attention on May 16, 1941, at which time the court made an order continuing same to May 30, 1941.

On May 30, 1941, it was ordered by the court that the (hearing on) motion be continued to June 20, 1941.

By some five several different orders, all (each) made on the date to which the hearing in said motion had theretofore been duly and regularly continued, the date of September 5, 1941, to which date the hearing had been last continued, arrived.

On that date, viz., September 5, 1941, the following order was entered, to-wit: "This being the day to which this motion was continued for hearing comes the State of Alabama by its Solicitor, Gordon Davis, and comes also the defendant in his own proper person and by attorney in open court, and the court proceeds to hear this motion. After having heard and understood said motion the court is of the opinion that this motion is not well taken and should be overruled. It is therefore considered by the court and it is the order and judgment of the court that this motion be and it is hereby overruled. The defendant then and there in open court duly and legally excepts to the action of the court in overruling this motion."

It will be noted that on the occasion of none of the continuances of the hearing of said motion, nor on the actual hearing thereof, did the State interpose any objection to the consideration of said motion.

It is true that the motion for a new trial should have been filed, *and called to the attention of the court,* within thirty days from the date of the judgment of conviction. Code 1940 Tit. 13, § 119. And that this was not done. (We, of course, disregard the "certificate of the trial judge" sent up here long after the submission of the appeal. Anderson v. State, 29 Ala.App. 499, 198 So. 166, headnote 7.)

Ordinarily, this would cause the order of the trial judge entered on September 5th 1941 to be coram non judice; and would throw the date on which the bill of exceptions might be lawfully presented back to within ninety days from the date of appellant's conviction. Code 1940 Tit. 7, § 822. The bill of exceptions was presented on November 10th 1941. This, as is apparent, was well within ninety days from the date of the overruling of appellant's motion for a new trial; but much beyond ninety days from the date of appellant's conviction. Code 1940 Tit. 7, § 822, supra. (Of course the bill was duly signed and approved.)

The State has made a motion to strike the bill of exceptions, because it was "presented too late." Code 1940 Tit. 7, § 822, supra.

We think the law, as it is epitomized in the third headnote to the report of the case of Greer et al. v. Heyer, 216 Ala. 229, 113 So. 14, should control. It is, to-wit: "Consent proceedings, which necessarily recognize the cause as still pending, operate as a waiver of any prior ground of discontinuance, *which rule applies to motions for new trial.*" (Italics ours.)

Or, this, from the opinion in a case with which we are familiar, would seem apt, to-wit: "By appearing and unreservedly contesting the merits of the motion for new trial on June 2, 1920, the petitioner (plaintiff in the judgment in the circuit court) *waived* any right to claim a discontinuance consequent upon the absence (if so) of effective orders of continuance of the motion." Ex parte Schoel, 205 Ala. 248, 87 So. 801, 802.

And our Supreme Court said in the opinion in the case of Cain v. Jefferson Standard Life Ins. Co., 227 Ala. 458, 150 So. 689: "It is quite true that if both parties appear and proceed to a trial on the merits of a motion, and there is decision on the merits, the discontinuance is waived, McCarver v. Doe ex dem. Herzberg, 135 Ala. 542, 33 So. 486, or if the defendant in the motion appears and joins in the further proceedings without objection that the motion has been discontinued, the power of the court is said to be re-established to hear and determine the motion, Chilton v. Gurganus, 218 Ala. 145, 117 So. 655; Greer v. Heyer, 216 Ala. 229, 113 So. 14; Dulin v. Johnson, 216 Ala. 393, 113 So. 397; Ex parte Schoel, 205 Ala. 248, 87 So. 801."

The situation here is not different from the one causing the Supreme Court to make the observations we have quoted from the opinion in the case of Cain v. Jefferson Standard Life Ins. Co., supra. There, as here, the motion for a new trial was *filed in time,* i. e. within 30 days from

the date of the judgment, but it was not "heard" until *more than thirty days* after the date of the judgment,—with no "order continuing its hearing to that day," i. e. the date of the "hearing." And while the Supreme Court held there the judgment "dismissing" the motion did not operate as fixing the date from which the "appeal might be taken"—here, it would be the date from which to measure the time within which the "bill of exceptions might be filed" —it was because there was no "consent" to the hearing on the motion. And said Court observed as we have quoted hereinabove.

So, we take it that the law by which we are governed (Code 1940 Tit. 13, § 95) is as we have quoted from Cain v. Jefferson Standard Life Ins. Co., 227 Ala. 458, 150 So. 689.

Surely if that is the law with regard to "civil matters," it would be no less lenient where a man's *liberty* is involved. Cf. Caraway v. State, 18 Ala.App. 547, 93 So. 376.

So here we hold that the State, through its prosecuting officer, having consented—for it did not object—to the numerous continuances of the hearing on appellant's motion for a new trial, and, at the last, viz., September 5, 1941, having taken part in the "hearing on the merits" of said motion, will not now be allowed to say that the judgment overruling said motion did not have the effect of fixing the date from which the bill of exceptions might properly be presented, in order to come within the terms of Code 1940 Tit. 7, § 822. Cain v. Jefferson Standard Life Ins. Co., supra.

Moreover, even if the bill of exceptions was *not* presented within ninety days "from the day on which the judgment, or the order (efficacious) granting or refusing motion for new trial," was entered, it does not follow as of course that we would strike same upon the State's motion.

There was a time when we would have done so. Code 1940 Tit. 7, § 827; Ex parte Hill, 205 Ala. 631, 89 So. 58.

But our Supreme Court has expressed itself. First, we believe, was in the opinion in Jones v. State, 237 Ala. 614, 188 So. 384, 385, wherein that court said of § 6434 of the Code of 1923—the same in all respects as § 827 of Tit. 7 of the Code of 1940—that it "is not mandatory upon us, nor are we otherwise under any imperative duty to strike the bill of exceptions in such cases The matter is addressed to our sound discretion, to be wisely exercised in all cases. We may, or may not, strike the bill of exceptions, depending upon our conclusion as to whether or not a defendant's constitutional rights in a criminal case have or have not been secured to him.

"To refuse to strike a bill of exceptions in all cases, on motion of the attorney general (when the bill was not timely presented), will be a departure from our former holdings in such cases, but we are convinced that the relaxation of the rule in grave and important criminal cases, involving the constitutional rights of a defendant, will serve to promote the ends of justice. After all, courts are organized to administer justice without sale or denial."

Then, on the same day that the Supreme Court delivered itself as we have above quoted from Jones v. State, it put out its opinion in Rutherford v. State, 237 Ala. 613, 188 So. 385. But as both the Jones case and the Rutherford case (the Justices dividing in the Jones case) are treated in the opinion in the case of Clark v. State, 239 Ala. 10, 193 So. 320, 322 which we believe is the *last* expression of our Supreme Court on the subject we are discussing, we will examine the said opinion in the Clark case in order to ascertain, if we may, the law by which we are to be governed (Code 1940 Tit. 13, § 95).

But the opinion in the Clark case, as we understand it, rests the *law* on a quotation which it takes from the opinion in the case of Rutherford v. State, supra. It is:

"Bill of exceptions in criminal case must be taken and signed by presiding judge as in civil case. Code 1923 § 3234 [Code 1940, Tit. 15, § 365].

"The statute authorizing striking of bill of exceptions for delay in presenting or signing does not vest in Attorney General the exclusive right to decide, by moving to strike bill of exceptions on that ground, that denial of constitutional rights of defendant in criminal case may not be reviewed, and, in ruling upon such motion, *court will examine bill of exceptions, where set out in record on appeal, to see if any constitutional right of defendant was denied him.* Code 1923 §§ 6433, 6434 [Code 1940, Tit. 7, §§ 822, 827]." (Italics supplied by us).

Mr. Justice Thomas, writing for the Supreme Court in the Clark case, after setting out the quotation just next above from the opinion in the Rutherford case, and noting that the opinion in said Rutherford case, written by Mr. Justice Foster, was concurred in by "Justice Gardner, Justice Bouldin, and Chief Justice Anderson," then observes: "We, therefore, take as settled the construction of the statutes in question."

He then, referring to the Clark case, the opinion in which he was writing, asks himself (or the court) rhetorically: "Will the motion [i. e. the motion to strike the bill of exceptions in the said Clark case] be denied when referred to the last construction by this court with exceptions, to see if any constitutional rights of a defendant were denied, and with deference to the decision of the Supreme Court of the United States in Powell v. State of Alabama, 287 U.S. 45, 53 S.Ct. 55, 77 L.Ed. 158, 84 A.L.R. 527?"

The learned Justice then proceeded, by way of answering his own question, to observe: "We have examined the record and find no constitutional question presented or duly proven for decision in this case for the purposes of motion to strike, and this case is not within the exceptions to the decisions and rules of the statute hereinbefore considered."

But he overruled (or, rather, the court did) the motion to strike the bill of exceptions on *another,* and different, ground.

We confess our inability to understand *exactly* what is meant by our Supreme Court by the expression "constitutional right" of defendant. They nowhere define it.

In the case before us, we have "examined the bill of exceptions." And as we understand it, the defendant (appellant) was accorded his "constitutional rights."

But there was illegal evidence allowed against him; and other erroneous and prejudicial rulings made by the learned judge presiding over his trial.

Now should we grant the State's motion to strike the bill of exceptions, if it was *not* presented within the time prescribed by law? We confess we are uncertain.

But the law as set forth in the opinion in the case of Jones v. State, supra, while confused—by reason of the division of the court—seems not to have been anywhere overruled.

So, using the language there as our guide, we observe, here: "The matter [i.e. of striking the bill of exceptions on the State's motion, because not presented within time] is addressed to our sound discretion."

*Exercising* this discretion, *with the lights before us,* we would overrule the State's motion to strike the bill of exceptions, regardless of whether or not it was presented within ninety days from the date of the judgment of conviction, or within ninety days from the date of an efficacious ruling on appellant's motion for a new trial, below.

The State's motion to strike appellant's bill of exceptions is overruled.

And we get at last to the merits of the appeal.

As we have noted in the beginning of this opinion appellant was convicted of the offense of manslaughter in the first degree, and his punishment fixed at imprisonment in the penitentiary for the term of three years.

We might have stated that he was, at the time of the occurrence giving rise to the prosecution, a police officer of the City of Tuscaloosa.

The Attorney General states, and accurately, we think, in his brief: "There is (was) evidence that the defendant (appellant), in company with two other city officers, was parked near a house of ill fame in the City of Tuscaloosa, and that they were there for the purpose of picking up some women, alleged to have been engaged in prostitution. They were not armed with any warrants, but only with pistols. While sitting in said parked automobile they observed deceased and two women (and, we interpolate, appellant stated he *knew* they were prostitutes) come out of the house and get in the automobile which deceased was operating at the time he was killed. The death car (i.e. the car operated by deceased) pulled away from the curb, pursued by the automobile occupied by the officers. The officers gave chase some several blocks before the car driven by the deceased stopped temporarily, and let the women out. Both cars stopped about the same time, but just as quickly as the women got out of the car driven by the deceased, he, deceased, started driving away."

The officers undertook to get deceased to stop, telling him they were officers, but

deceased ignored their request, and continued on his way.

The officers, two of them doing the shooting, then began to fire their pistols at, they testified, the tires on deceased's automobile. It was dark; and, in the confusion, a bullet from one of the officer's guns pierced the glass on the back of deceased's car, passed through, and struck deceased in the back of the head, killing him. It is entirely possible that deceased's car going over a sort of knoll in the road, into a kind of depression beyond, accounted for the bullet striking the car at a high enough point to account for the tragic denoument.

The evidence was sufficient to enable the jury to rightfully infer that it was a bullet fired from the gun of appellant which caused the death of deceased.

Perhaps it is well enough to say that there was in force in the City of Tuscaloosa at the time an ordinance which prohibited one from "riding or walking" along the streets of said City with a public prostitute. And that the situation confronting appellant and the other officers with him amply warranted their undertaking to arrest deceased at the time.

But of course appellant had no right to shoot deceased—even to effect his arrest.

For that matter, appellant contended, and his evidence tended to show, that he at no time shot *at* deceased, nor into the part of the automobile where he was riding.

If, as he contended, he did no more than shoot at the *tires* of deceased's automobile and if, by some quirk of fate, the automobile's *body* was brought, unexpectedly, and in a way that could not be anticipated, in the *line of his fire,* thereby causing the bullet fired by him to kill deceased, we do not see how it could be said that he was guilty of manslaughter—certainly, of manslaughter in the first degree. And he was entitled to have his contention submitted to the jury freed of irrelevant and hurtful evidence.

■ On some theory of which we are not appraised Mr. A. Parker Mize was allowed to testify that he was a number of the Civil Service Board of the City of Tuscaloosa, and to describe his duties. There was then introduced into the evidence, over appellant's objection, with due exception reserved, so-called Rule 28 of the Civil Service Board of the City of Tuscaloosa, which was in words and figures as follows, to-wit: "Rule 28. Revolvers Must Not be Used upon Mere Suspicion. No policeman shall use his revolver when he actually sees a person commit a crime, when the person is running away merely to escape arrest, except in extreme cases, such as murder, rape, burglary, arson, or similar crimes. He ought, rather than to shoot him, permit him to escape for the commission of an alleged mino. offense. The officer shall not fire upon a person who is called upon to halt upon mere suspicion, and who, without making resistance, runs away to avoid arrest. And in all cases, the officer should bear in mind the danger of injuring innocent persons when firing a revolver."

As stated, we do not know the theory upon which this so-called Rule 28 was admitted into the evidence. The Attorney General representing the State here says *he* does not know.

The learned trial judge, in his oral charge to the jury had *this* to say about it: "There has been a rule introduced here of the Civil Service Board of the City of Tuscaloosa, which prohibits a policeman from using his gun in making arrest for a misdemeanor charge, and I admitted that solely for the purpose of the jury having that before them in deciding the degree of care that would be placed, under the law, on this defendant. In other words, that is not a law."

Indeed it is not. And it is perfectly clear to us that its only effect could have been to inflame the jury against appellant. Lengthy discussion seems useless.

The rights, duties, privileges, and obligations of appellant, in the premises, were fixed by the law of our State.

They could be in no manner affected by any rule of the Civil Service Board of the City of Tuscaloosa. The Rule 28 referred to was entirely irrelevant to any issue in the case.

We must hold its introduction into the evidence error—highly prejudicial, as we are persuaded, to appellant.

Exactly what we have said, and all that we have said, with regard to the allowance in evidence of Rule 28 of the Civil Service Board of the City of Tuscaloosa, applies, and we here apply it, to the introduction into the evidence of Rule 18 of said Civil Service Board, which we will not set out, but which is entitled "Neglecting to Wear Proper Uniform while on Duty."

In his argument to the jury trying the case, one of the Attorneys assisting in the prosecution of the case used this language, to-wit: "Mr. Pate is commonly known as Pistol Pate." The defendant (appellant) promptly objected to the said argument, but his objection was overruled.

In this ruling there was error prejudicial to appellant. There was no scintilla of evidence in the case supporting the said statement. And it was, in our opinion, in the teeth of the rule governing such matters laid down in Cross v. State, 68 Ala. 476. The degree of its harm could only be known to those familiar with the seductive persuasiveness of the counsel making the entirely unauthorized statement.

In the main, the case was ably tried. Freed from the errors we have pointed out, we are persuaded that its retrial should occasion no perplexity.

But for those errors the judgment is reversed and the cause remanded.

Reversed and remanded.

PER CURIAM.

Affirmed on authority of Pate v. State, 244 Ala. 396, 14 So.2d 251.

