283 So.2d 642

**Tom Harmon SCOTT**

**v.**

**STATE.**

**I Div. 359.**

Court of Criminal Appeals of Alabama.

Sept. 25, 1973.

Donald E. Brutkiewicz, Mobile, for appellant.

William J. Baxley, Atty. Gen., and David W. Clark, Asst. Atty. Gen., for the State.

LEIGH M. CLARK, Supernumerary Circuit Judge.

A jury found appellant-defendant guilty of robbery as charged in an indictment, to which he pleaded not guilty, and fixed his punishment at imprisonment in the penitentiary for a term of fifteen years. The trial court rendered judgment and sentence accordingly, and this appeal was taken therefrom.

The evidence supports the finding of guilty, which is conceded by appellant in the statement in his brief under the caption "FACTS OF THE CASE", as follows:

"Lloyd Demsey Curry, an employee of the AA Oil Station, was at work at about 11:30 p. m. on the night of September 14, 1971, when the appellant, who was a fellow employee, robbed him with a pistol that was regularly kept at said station. (T–4–8)

"The appellant was arrested the same night at an assignation house and con-

fessed his guilt to the officers. The appellant introduced relatives who testified that this was his first breach with the law and that he had enjoyed a good general reputation. The appellant took the stand and admitted his guilt."

Appellant's sole insistence on a reversal is based upon the proceedings shown by the following portions of the record:

"(Whereupon, the Defense Attorney made his closing statement to the Jury during which the following occurred:)

"MR. BRUTKIEWICZ: There was probably three hundred offenses of which a person could be punished capitally. In other words, there was, any offense from stealing of a pepper corn right on up to robbery and murder where a person could be convicted capitally and could be hung and in some cases, hung, or put on spikes, quartered. They could quarter them and put them on, portions of their body, quarter their body and put them up on spikes, to show as a reminder to others who had the propensity to commit a crime, to show the reminder that death was the punishment and it is harsh and it is a type of punishment that we want everybody to know about.

"MR. DOYLE: Judge, I'm going to have to object to this line of closing argument.

"THE COURT: I think you're out in far field, Mr. Brutkiewicz, I sustain his objection on that.

"MR. BRUTKIEWICZ: Judge, I would like to object to your Honor's limiting my argument. I would like to cite Cross v. State, where I've got a right to talk about common knowledge.

"THE COURT: Well, it is not the law in this State, Mr. Brutkiewicz. There's nobody going to be quartered and drawn and hung on spikes or anything like that and I think it is irrelevant.

"MR. BRUTKIEWICZ: I would like to have a choice, Judge, and I want to show that—.

"THE COURT: I sustained his objection, that ends the discussion, it is on the record.

"MR. BRUTKIEWICZ: And I would like to cite Cross v. State—.

"THE COURT: All right, I've already ruled on it. Mr. Brutkiewicz, please do what I ask you to.

"MR. BRUTKIEWICZ: All right.

\*    \*    \*    \*    \*    \*

"(Whereupon, the Defense Attorney made his closing statement to the Jury during which the following occurred:)

"MR. BRUTKIEWICZ: I think under our system as it is today in the State of Alabama and the system that we Americans think about, we sometimes spend almost as much time in an effort to try to establish the root causes of misery and root causes of injustice and root causes of crime and the root causes of people acting the way they do and we almost endeavor to show not the power, where once there was nothing in the world but complete swiftness of justice, nothing in the world but complete absoluteness of justice, nothing in the world but a complete system whereby people were punished in a system that was stamped out.

"MR. DOYLE: Judge, I'm going to object again. We're going back to the same argument, leading out for a history lesson.

"THE COURT: Mr. Brutkiewicz, I will appreciate it if you will do what I have requested you to do, please get down to the argument of the case. It is not the function of this Jury to exercise its discretion with respect to mercy except—. I'm going to charge the Jury on this very question here, but you go ahead. The Jury's function is to determine whether or not this man is guilty

or not and if they find him guilty in accordance with the instructions which I give to them, to set the punishment. That's the sole function of this Jury, now go ahead, please.

"MR. BRUTKIEWICZ: I wish to cite that case again, and object to your Honor's limiting my argument.

"THE COURT: All right, sir, I've already noted it."

In an effort to support his thesis that the trial court unduly restricted defendant's counsel in his argument and while doing so made an erroneous comment to the injury of defendant, counsel for appellant marshals numerous authoritative cases, beginning with Cross v. State, 68 Ala. 476, and concluding with recent opinions of appellate courts of Alabama. In addition, he cites and quotes an excellent statement (in no respect inconsistent with anything herein stated) of Presiding Judge Cates in his highly valuable two-part article, Cates, Closing Arguments in a Criminal Case, The Alabama Lawyer, Vol. 33, p. 87 and p. 205; and appellant asserts that there was a violation of his constitutional right to counsel as provided by the Sixth Amendment to the Constitution of the United States and Article 1, § 6, Constitution of Alabama, 1901.

■ As shown by the hereinabove quoted excerpt from the record, appellant's counsel relied heavily upon Cross v. State, supra, and he continues to do so in his brief. With what was said and done in that case, there can be no disagreement. Defendant's constitutional right to counsel in a criminal case necessarily includes the right, subject to reasonable restrictions, to have his counsel plead for him to the limit of counsel's power of persuasion. In the full exercise of that right, a defendant is entitled, subject still to reasonable restrictions, to have his counsel employ all of his talents and transmit, if he can, to the jury, or other group or person sitting in judgment, all the contents of an encyclopedic mind that bear upon the question being discussed and properly under consideration at the time. Pillar-shaking would be the consequences of a denial of that right.

■ Statements to be found in a multitude of cases to the effect that counsel should limit argument to the evidence are to be taken as meaning that counsel should make no argument that is calculated to serve the purpose of evidence. The argument involved here does not violate that rule.

■ We agree with argument in appellant's brief to the effect that upon the question properly submitted to the jury of the extent of punishment to be imposed in the event of a finding of guilty, defendant's counsel, in supporting his advocacy for a light punishment, should be allowed to refer not only to the evidence in the case but also to any and all branches of knowledge from which analogies and illustrations pertinent to the question can be fairly drawn. Had it been made clear to the trial judge that the argument made, or sought to have been made, was addressed solely to the question of the extent of punishment to be imposed in the event defendant was convicted, as distinguished from its being addressed in whole or in part to the question of defendant's guilt, we are far from certain that the trial court's ruling would have been the same. On this appeal appellant's counsel certainly makes it clear that he considers that the argument, or proposed argument, was directed to the question of extent of punishment and not to the question of guilt, and we do not question that he so deemed it then and so deems it now. Nevertheless, we are unable to say that the trial judge so considered it. Nor are we able to say that the argument was so presented as to have required that he so consider it.

To deal circumspectly with the difficulty of the problem facing the court in proceeding with the trial of this case, a short review of recent judicial history, still in the making at the time of the trial, September

18, 1972, should be considered. Until June 29, 1972, when Furman v. Georgia, 408 U. S. 238, 92 S.Ct. 2726, 33 L.Ed.2d 346, was decided, it had been uniformly held by the courts of Alabama, and it was generally understood, that a conviction of the crime of robbery could, in the discretion of the jury, entail the death penalty, as provided by statute. The decision in *Furman,* as well as other decisions rendered at the time or in the wake of *Furman,* vacating the death sentence in such cases and deducibly proscribing it in the case here, created unprecedented problems. There was even some question as to whether on petition for rehearing there would be a wavering or change in the 5–4 decision in *Furman,* which was resolved on October 10, 1972, by denial of the petition. 409 U.S. 897, 93 S.Ct. 89, 34 L.Ed.2d 163. Other problems revolved around the question of appropriate procedure in cases in which the death penalty had been imposed and in cases in which the death penalty could be imposed according to the view that prevailed prior to *Furman.* Such question was resolved by Hubbard v. State, 290 Ala. 118, 274 So.2d 298, and Swain v. State, 290 Ala. 123, 274 So.2d 305, both decided March 8, 1973; and both of which had met the fate of *Furman,* and at the same time, in their remandment to the Supreme Court of Alabama by the Supreme Court of the United States. Although the opinions as cited in both cases involved questions arising after trial and on appeal only, the opinions made it crystal clear that it was necessary to eliminate the death penalty provision of the law. It was eliminated by the trial court in this case. How it was eliminated, that is, the details of any understanding between the trial court and counsel as to its elimination, we do not find in the record. In this respect we find only that the death penalty of the statute was advisedly disregarded and the jury plainly instructed that in the event of a finding of guilty the minimum punishment was ten years imprisonment in the penitentiary and the maximum punishment was imprisonment in the penitentiary for life, that the jury in fixing punishment, in the event of a guilty verdict, should fix it at imprisonment in the penitentiary for ten or more years, or for life.

Appellant's counsel argues well to the effect that where there is no real issue as to guilt, where defendant does not contend that he is not guilty and has "admitted his guilt", his counsel should be allowed to make an argument such as the one under consideration here. In gist, perhaps the argument is to be likened to the peroration of Clarence Darrow in the Loeb and Leopold cases, made largely anachronistic in this case by the abolition of the death penalty in *Furman,* supra. In addition, it should be noted that in those cases (in which, unimportantly and merely incidentally insofar as this discussion is concerned, the right to a trial by jury had been waived) Mr. Darrow's argument was made after pleas of guilty were entered and unquestionably was directed solely to the question of the proper punishment. Such was not true on the trial in this case. Notwithstanding the fact that the guilt of appellant is emphatically admitted here, a plea of not guilty was entered in the court below and insisted upon by defendant throughout the trial of the case.

It is to be noted that the argument under consideration was in two parts. Whether the jury could have been expected to construe the first part as some indication that defendant could be punished capitally cannot be determined from the record with absolute certainty, but it seems that the trial judge considered that there was a likelihood of such a construction, or else there was no occasion for his statement:

"Well, it is not the law in this State, Mr. Brutkiewicz. There's nobody going to be quartered and drawn and hung on spikes or anything like that and I think it is irrelevant."

Even though the argument made or attempted may have been permissible on the question of extent of punishment in a case in which the death penalty was sought or made possible, it tended to bewilder more

than to enlighten the jury as to appropriate punishment in this case, from which, with the natural assent of defendant, the penalty of death had been painlessly excised.

■ The argument was not appropriate on the question of guilt. On such question the first part of the argument carries with it the implication that a jury should be influenced by the extent of punishment to find the defendant not guilty, even though such a finding would be contrary to the law and the evidence in the case. Whatever of value to defendant there was in the second part of the proposed argument is to be found in the popular theme that "root causes of crime" are in society generally or elsewhere other than in the criminals themselves. Whatever devotion is fitting at that shrine should not be allowed to subvert the administration of justice according to law. Argument along such line within reasonable bounds has a place on the question of extent of punishment, in asking that justice be tempered with mercy. In this case, as well as in most cases, it is irrelevant to the question of guilt or innocence.

That the trial judge deemed the proposed argument to have been chiefly, if not solely, addressed to the question of whether to find defendant guilty or not guilty is evidenced by his statement:

> " . . . . It is not the function of this Jury to exercise its discretion with respect to mercy except—. I'm going to charge the Jury on this very question here, but you go ahead. . . ."

and the continuation of the statement as to the function of the jury. It may well be that there was some misunderstanding between the trial judge and defendant's counsel, but the record indicates that the court did not so close the door as to forbid the argument if and as addressed to the question of the extent of punishment. The argument directed otherwise cannot be justified, and apparently there is no contention to the contrary.

■ It should be noted that in stating and emphasizing in appellant's brief that on the trial he "confessed his guilt" and that he "admitted his guilt," appellant is not contending, nor can he correctly contend, that this was the equivalent, or considered by anyone as the equivalent, of a plea of guilty. Defendant testified that he was intoxicated at the time of the alleged crime, which testimony and stout contention, notwithstanding strong evidence to the contrary, furnished the crux of an asserted defense to the effect that defendant was so intoxicated that he was incapable of having the specific intent requisite in the crime expressly charged in the indictment. The oral charge of the court, to which no exception was taken, and the record as a whole show clearly that the trial judge, the prosecuting attorney, defense counsel, and the jury understood that defendant was steadfastly contending that he was innocent of the crime expressly charged and that the issue of guilt or innocence was under all the circumstances for determination by the jury. There can be no doubt from the record that a definite, if not the only, goal of defendant throughout the trial was a verdict of not guilty. Neither in form nor in substance was the plea of not guilty ever changed to a plea of guilty. It was not considered by anyone as a plea of guilty, and it would have been reversible error for the trial court to have treated it as such. Boykin v. Alabama, 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274.

We are appreciative of the dedicated services rendered defendant by his counsel, both on the trial and on this appeal, services that were extraordinarily fruitful on the trial, as vivified by the relatively light punishment imposed, which would not have been any lighter, we believe, had the ruling and remarks of the trial court made a target of this appeal been otherwise.

Our search of the record reveals no error prejudicial to defendant. The judgment of the trial court should be affirmed.

The foregoing opinion was prepared by Honorable LEIGH M. CLARK, Supernu-

merary Circuit Judge, serving as Judge of this Court under Section 2 of Act No. 288, Acts of Alabama, July 7, 1945, as amended; his opinion is hereby adopted as that of the Court.

The judgment below is hereby

Affirmed.

All Judges concur.

William J. Baxley, Atty. Gen., and David W. Clark, Asst. Atty. Gen., for the State.